**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **PAUL JOSEPH DELLA ROCCO,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Cause No. EP-25-CV-600-KC** |
| | § | |
| **CHARISMA EDGE,** *Warden*, **FCI La Tuna,** | § | |
| **Respondent.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Paul Joseph Della Rocco, Federal Prisoner Number 17738-480, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1. His opposed petition is dismissed without prejudice because he failed to exhaust his administrative remedies.

## BACKGROUND

Della Rocco is a 68-year-old prisoner confined to the La Tuna Federal Correctional Institution in Anthony, Texas, which is within the jurisdiction of this Court. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 17738-480, last visited July 7, 2025). His projected release date is March 9, 2031.

On September 14, 2018, Sergeant Abel Sanchez and Officer Gerald Ornelas of the Ector County (Texas) Sheriff's Office stopped Jenny Hofer while she was driving her vehicle. *United States v. Della Rocco*, 799 F. App'x 306, 306 (5th Cir. 2020). They searched her vehicle and discovered a large quantity of methamphetamine inside. They learned from Hofer that Della Rocco supplied her methamphetamine. Based on this information, they agreed to release Hofer in exchange for her promise of future cooperation.

On October 5, 2018, Hofer informed Sergeant Sanchez that Della Rocco had contacted her the night before. She claimed that Della Rocco had agreed to deliver more methamphetamine to

her at a restaurant in Odessa, Texas. Shortly after Hofer met Della Rocco at the restaurant and, she alerted Sergeant Sanchez that Della Rocco had methamphetamine inside his vehicle parked outside. *Id.* at 307.

Law enforcement officers followed Della Rocco as he left the restaurant to go to his pickup truck. They detained Della Rocco, searched his vehicle, and discovered methamphetamine and drug-trafficking paraphernalia inside. In total, law enforcement agents recovered 1.0413 kilograms (2.3 pounds) of actual methamphetamine from Della Rocco's truck.

Della Rocco was taken into federal custody on October 8, 2018. *United States v. Della Rocco*, 7:18-cr-00237-DC (W.D. Tex.), Presentence Investigation, ECF No. 59 at p. 1. He was ordered detained without bond on October 15, 2018, and he remained in federal custody. He was found guilty on January 17, 2019, of possession with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id.*, J. Crim. Case, ECF No. 64 and Order, ECF No. 98. He was sentenced on April 25, 2019, to 235 months' imprisonment, which was later reduced to 188 months' imprisonment, followed by five years' supervised release.

Della Rocco alleges that Respondent Warden Chrisma Edge has not properly calculated his Good Time and First Step Act Credits which are used to determine his release date. Pet'r's Pet., ECF No. 1 at 1. Specifically, he claims that he is entitled to First Step Act Credits for the time he spent in custody "between April 25, 2019, and October 15, 2025" and between "October 05, 2018, and October 15, 2025." *Id.* at 1, 3. He further claims that he has not received a Second Chance Act placement, which could allow him to spend up to 365 days in a residential reentry center and six months in home confinement. *Id.* at 2, 3. He argues that he is not required to exhaust his

2

administrative remedies because this action involves his unlawful and illegal imprisonment in violation of the Constitution and laws of the United States. *Id.* at 5. He asks the Court to issue an order directing Warden Edge to "properly provide all Good Time, First Step Act, and Second Chance Act Credits" to which he believes he is entitled. *Id.*

Warden Edge agrees that Della Rocco has not exhausted his administrative remedies and asks the Court to dismiss his petition on this ground alone. Resp't's Resp., ECF No. 6 at 7. Moreover, she maintains that the Bureau of Prisons ("BOP") has properly calculated Della Rocco's time credits, and Della Rocco has not identified any error in the BOP's calculations or in its determination of his projected release date. Finally, to the extent that Della Rocco is requesting transfer to a residential reentry center, she argues that his request should be denied because the BOP, not the court, has the sole authority to determine a prisoner's place of incarceration.

Della Rocco disagrees and suggests "[t]he exhaustion of administrative remedies applies only to prison conditions and not to unlawful confinement or imprisonment." Pet'r's Reply, ECF No. 7 at 4. He insists the calculation of his time credits is incorrect and the Court should not defer to the BOP's implementation of the First Step Act's time credit provisions. *Id.* at 6.

## STANDARD OF REVIEW

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show that he is "in custody

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

**ANALYSIS**

### A. Exhaustion

Della Rocco maintains "[t]he implication that [he] must exhaust his administrative remedies is incorrect." *See* Pet'r's Pet., ECF No. 1 at 5. A search of Della Rocco's administrative remedy history shows that "[a]s of January 14, 2026, [he had] filed three administrative remedies [which] center[ed] on requests for compassionate release. None of the remedies presented are relevant to Petitioner's First Step Act, Good Conduct Time, or Second Chance Act credits." *See* Resp't's Resp., Ex. 2 (Decl. of Michael Caldwell), ECF 6-3 at ¶ 10 and attach. 5 (Administrative Remedy Generalized Retrieval), ECF No. 6-3 at 19–21. He argues that "[t]o require the exhaustion of administrative remedies in a habeas corpus claim would be to create a rule that abrogates a Constitutional right which is prohibited." Pet'r's Pet., ECF No. 5 at 5. He is wrong. *United States v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010).

The Fifth Circuit has long held that the BOP should be permitted to administratively rectify an error if it fails to properly calculate a sentence. *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991). "In the event that a prisoner feels he has been improperly refused credit for time he has served in … custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the] prisone[r] may only then pursue judicial review of these computations.'" *Setser*, 607 F.3d at 133 (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through the

multi-step BOP exhaustion procedure prior to filing his § 2241 petition."); *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) ("[T]his court has determined that a § 2241 petitioner "must first exhaust his administrative remedies through the Bureau of Prisons.") (quoting *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990) (citations omitted)).

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). And a petitioner bears the burden of demonstrating such circumstances. When an inmate lacks a valid excuse for failing to exhaust his administrative remedies prior to filing a § 2241 petition, his petition should be dismissed. *See Thomason v. Guzik*, 226 F.3d 642, at *1 (5th Cir. 2000) (per curiam) ("As he has failed to demonstrate extraordinary circumstances which would warrant a waiver of the exhaustion requirement, we AFFIRM the district court's dismissal of the petition for failure to exhaust administrative remedies.").

Consequently, Della Rocco "must first pursue all available administrative remedies" before seeking relief under § 2241. *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). And his exhaustion in this context means "proper exhaustion," including his compliance with all administrative deadlines and procedures established by the BOP. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

The Court finds that Della Rocco has failed to exhaust his administrative remedies or carry his burden of proving the futility of an administrative review. *See Fuller*, 11 F.3d at 62

(explaining federal prisoners must exhaust "administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241."). It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Della Rocco had properly exhausted his claims, the Court would not grant him the § 2241 relief he seeks.

**B. Alternatively, Della Rocco's Petition Lacks Merit**

Della Rocco suggests that Warden Edge has not properly calculated his Good Time Credits ("GTCs"), First Step Act Earned Time Credits ("FTCs"), and Second Chance Act "credits." Pet'r's Pet., ECF No. 1 at 5.

**(1) Jail Credits**

After a district court sentences a federal offender, the BOP has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a)). The BOP must credit a federal prisoner for the days spent in pretrial custody prior to the imposition of a sentence if that time is not credited against another sentence. 18 U.S.C. § 3585(b); *Leal v. Tombone*, 341 F.3d 427, 428 (5th Cir. 2003) ("The Attorney General, through the Bureau of Prisons (BOP), determines what credit, if any, will be awarded to prisoners for time spent in custody prior to the commencement of their federal sentences.").

In this case, the BOP granted Della Rocco 202 days of jail credit for the time he spent in detention before the commencement of his federal sentence on April 25, 2019. Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), ECF No. 6-2 at ¶ 5, and Attach 1 (Public Information Inmate Data), ECF No. 6-2 at 10; *see* 18 U.S.C. § 3585(b)(1). The BOP also determined that Della Rocco's full-term

expiration date on his 188-month sentence was June 5, 2034, without the application of any GCTs or FTCs.

### (2) Good Time Credits (GTCs)

A prisoner serving a term of imprisonment of more than one year may receive 54 days of GTCs for each year of imprisonment. 18 U.S.C. § 3624(b)(1).

Based on an 188-month sentence, Della Rocco could earn up to 846 days of GTCs. Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), ECF No. 6-2 at ¶ 5. But his disciplinary history reveals he has not consistently complied with institutional regulations, and he has forfeited 27 days of GTCs for fighting with another person. *Id.* at ¶ 6. Assuming he receives the maximum amount of GTCs moving forward, he should accrue a total of 819 GTCs. Applying these GCTs to his full-term expiration date results in a conditional release date via GCTs of March 8, 2032. *Id.* at ¶ 7.

### (3) First Step Act Earned Time Credits (FTCs)

Della Rocco claims that he is entitled to FTCs for the time he spent in custody from the day of his arrest on or about October 5, 2018, until October 15, 2025. Pet'r's Pet., ECF No. 1 at 3.

Congress could have easily legislated the specific date that an inmate begins earning FTCs. But it chose not to do that. Instead, Congress provided that an inmate's ability to earn FTCs will not begin until after his "sentence commences." Specifically, the First Step Act provides:

> (B) Availability. – A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed … during official detention prior to the date that the prisoner's sentence commences under section 3585(a).

18 U.S.C. § 3632(d)(4)(B).

A sentence commences under 18 U.S.C. § 3585(a) when "the defendant is received in

custody awaiting transportation to ... the official detention facility at which the sentence is to be served." But the regulation at 28 C.F.R. § 523.42(a) adds "[a]n eligible inmate begins earning [FTCs] after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." 28 C.F.R. § 523.42.

The language in 28 C.F.R. § 523.42(a) should be read as a point of clarification as to when an inmate is eligible to begin earning FTCs. This is because the First Step Act requires the Attorney General to conduct a risk and needs assessment before assigning him to evidence-based recidivism reduction (EBRR) programs and productive activities (PAs) and permitting him to accrue FTCs. 18 U.S.C. § 3632(a).

The risk and needs assessment consist of two components: a Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) score and a Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13). *Lopez v. Edge*, No. EP-25-CV-390-KC, 2026 WL 800757, at *3 (W.D. Tex. Mar. 23, 2026). The PATTERN score is designed to: (1) determine an inmate's recidivism risk; (2) assess an inmate's risk of violent or serious misconduct; (3) determine the type and amount of programming appropriate to reduce an inmate's risk of reoffending; (4) assess an inmate's recidivism risk and programming needs; and (5) determine when an inmate is ready to transfer to prerelease custody or supervised release. 18 U.S.C. § 3632(a). SPARC-13 is used to examine an inmate in areas which can be targeted to reduce his risk of recidivating. Based on the results of the PATTERN score and SPARC-13, the BOP staff will recommend EBRR programs and PAs for an inmate consistent with his specific criminogenic needs.

Additionally, the BOP must evaluate each EBRR program and PA to ensure that it meets the First Step Act's requirements. These requirements include: (1) evidence that the program or activity reduces recidivism or is based on research indicating it is likely to be effective in reducing recidivism, and (2) "is designed to help prisoners succeed in their communities upon release from prison." 18 U.S.C. §§ 3635(3)(A) and (B).

There are several practical reasons for this delay in accruing FTCs. First, an inmate is often not in BOP custody at the time of sentencing and is instead held in a local detention facility. As a result, the BOP has little to no information about the inmate and cannot complete the required PATTERN and SPARC-13 evaluations. Second, the BOP cannot evaluate EBRR programs and PAs in a non-BOP facility to ensure they meet the FSA requirements. So, an inmate generally cannot begin a BOP-approved EBRR or PA until he reaches his designated facility and is properly evaluated. Indeed, without the needs assessment, the BOP does not know which BOP-approved EBRR programs or PAs are appropriate for the inmate.

Consequently, it follows that Della Rocco could not have "successfully participated" in any recommended programming—and could not have accrued any FTEs—before he arrived at his designated BOP facility because (1) he did not undergo a risk and needs assessment until he arrived and (2) the BOP did not have the opportunity to evaluate and ensure that prospective EBRR programs or PAs met Della Rocco's requirements based on his needs identified in his risk and needs assessment. *See, e.g., Poff v. Carr*, No. 4:21-CV-900-P, 2022 WL 2133871, at *5-6 (N.D. Tex. June 14, 2022) (unpublished) ("[A]ny program or activity that [petitioner] seeks FSA time credits for must be approved by the BOP and be assigned to her based on her specific criminogenic needs"); *Hare v. Ortiz*, Civ. No. 20-14093 (RMB), 2021 WL 391280, at *9 (D.N.J.

9

Feb. 4, 2021) (unpublished) ("Time [c]redits are earned only when an inmate successfully completes one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate."); *Milchin v. Warden*, No. 3:22-cv-195 (KAD), 2022 WL 1658836, at *3 (D. Conn. May 25, 2022) (unpublished) ("[A] prisoner may earn time credits only for completing programs to which he has been specifically assigned based on his particular recidivism risk."). As a result, Della Rocco is not entitled to FTCs for the time he spent in federal custody between the day he was taken into federal custody on October 8, 2018, and the day he arrived at his designated BOP facility on May 23, 2019. Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), ECF No. 6-2 at ¶ 19.

The First Step Act allows an eligible prisoner to apply FTCs toward time in pre-release custody or supervised release. 18 U.S.C. § 3632(d)(4)(A). It gives qualifying prisoners the opportunity to earn ten days of FTCs for every 30 days of successful participation in EBRR programs PAs. *Id.* § 3632(d)(4)(A)(i). It allows qualifying offenders at a "minimum" or "low risk" of recidivating to earn an additional five days of FTCs if they do not increase their risk levels over two consecutive assessments. *Id*. § 3632(d)(4)(A)(ii). It permits qualifying inmates to apply FTCs toward pre-release placement in a residential reentry center or home confinement. *Id.* § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). And, at the discretion of the Director, it permits qualifying prisoners to apply FTCs toward their early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

As of January 17, 2026, Della Rocco had accrued 1,170 FTCs. Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), ECF No. 6-2 at ¶ 17. In accordance with BOP policy, 365 of his FTCs will be applied toward his early transfer to supervised release. With the application of these FTCs, his conditional release date via GCTs of March 8, 2032, was modified to March 9, 2031, via FTCs.

10

Della Rocco's remaining FTCs may be applied to his placement in prerelease custody in a residential reentry center or home confinement. *Id.* at ¶ 14. However, under the First Step Act, he cannot apply these FTCs until his total FTCs are equal to the remainder of his sentence. *Id*. at ¶ 18.

### (4) Second Chance Act Placement

The Second Chance Act authorizes the BOP to *consider*, to the extent practicable, placing an inmate who is nearing the end of his imprisonment in prerelease custody. 18 U.S.C. § 3624(c). Importantly, the statute only requires the BOP to *consider* placing an inmate in pre-release custody for up to twelve months or in home confinement for up to six months. It does not *require* the BOP to make such a placement. The Second Chance Act does not create any additional "credits."

Moreover, the BOP is responsible for designating "the place of the prisoner's imprisonment." *Id.* § 3621(b). Consequently, the BOP—not a court—is the proper place to direct a request for placement in an RRC or HC. *United States v. Sneed*, 63 F.3d 381, 388 n.6 (5th Cir. 1995) (citing 18 U.S.C. § 3624(c) (providing that the BOP has the authority to "place a prisoner in home confinement")). Additionally, release from institutional custody to a residential reentry center or home detention "is a change in conditions of confinement and not cognizable under § 2241." *Maldonado v. Rule*, No. 4:24-cv-0971-P, 2025 WL 476256, at *2 (N.D. Tex. Feb. 11, 2025) (citing *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) (explaining a challenge to exclusion from program allowing home confinement is more properly brough as a *Bivens* action)).

### (5) Summary

In summary, Della Rocco does not explain how the BOP erred in calculating his projected release date—and the Court, after reviewing the record, sees no errors. His conclusory allegations that Warden Edge miscalculated his GTCs, FTCs, and improperly denied him early placement in a

community-based residential facility under the Second Chance Act are "insufficient for federal habeas relief [because he] has not met Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires a petitioner to plead facts in support of his claims." *Murphy v. Dretke*, 416 F.3d 427, 436–37 (5th Cir. 2005); *see also Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("conclusory allegations do not raise a constitutional issue in a habeas proceeding"). His argument that he is entitled to Second Chance Act "credits" is based on the erroneous premise that such credits exist.

## CONCLUSIONS AND ORDERS

The Court concludes that Della Rocco has failed to exhaust his administrative remedies. It further concludes that his claims lack merit as he has failed to explain how the BOP erred in calculating his projected release date. The Court accordingly enters the following orders:

**IT IS ORDERED THAT** Petitioner Paul Joseph Della Rocco's "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**IT IS FURTHER ORDERED THAT** all pending motions are **DENIED**.

**IT IS FINALLY ORDERED THAT** the District Clerk shall **CLOSE** this case.

**IT IS SO ORDERED**.

**SIGNED this 10th day of July, 2026.**


_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE


12